IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NOS. 24-1380, 24-1480, 24-1493, 24-1516

ZIMMER RADIO OF MID-MISSOURI, INC., ET AL.,

PETITIONERS,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

RESPONDENTS.

ON PETITIONS FOR REVIEW OF AN ORDER OF THE
FEDERAL COMMUNICATIONS COMMISSION

| | |
|---|---|
| JONATHAN S. KANTER<br>ASSISTANT ATTORNEY GENERAL | P. MICHELE ELLISON<br>GENERAL COUNSEL |
| ROBERT B. NICHOLSON<br>ROBERT J. WIGGERS<br>ATTORNEYS | JACOB M. LEWIS<br>DEPUTY GENERAL COUNSEL |
| | JAMES M. CARR<br>COUNSEL |
| UNITED STATES<br>   DEPARTMENT OF JUSTICE<br>WASHINGTON, D.C. 20530 | FEDERAL COMMUNICATIONS COMMISSION<br>WASHINGTON, D.C. 20554<br>(202) 418-1740 |

# TABLE OF CONTENTS

§ 202(h) of the Telecommunications Act of 1996
(set forth in a note to 47 U.S.C. § 303) ............................................................ Add. 1

47 U.S.C. § 303 ................................................................................................. Add. 2

47 C.F.R. § 73.3555 ........................................................................................ Add. 10

Telecommunications Act of 1996
Pub. L. No. 104-104
110 Stat. 56

\* \* \*

**§ 202(h) (as amended)**

(h) FURTHER COMMISSION REVIEW.—The Commission shall review its rules adopted pursuant to this section and all of its ownership rules quadrennially as part of its regulatory reform review under section 11 of the Communications Act of 1934 and shall determine whether any of such rules are necessary in the public interest as the result of competition. The Commission shall repeal or modify any regulation it determines to be no longer in the public interest.

## § 303. Powers and duties of Commission

Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall--

**(a)** Classify radio stations;

**(b)** Prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class;

**(c)** Assign bands of frequencies to the various classes of stations, and assign frequencies for each individual station and determine the power which each station shall use and the time during which it may operate;

**(d)** Determine the location of classes of stations or individual stations;

**(e)** Regulate the kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein;

**(f)** Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this chapter: *Provided, however*, That changes in the frequencies, authorized power, or in the times of operation of any station, shall not be made without the consent of the station licensee unless the Commission shall determine that such changes will promote public convenience or interest or will serve public necessity, or the provisions of this chapter will be more fully complied with;

**(g)** Study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest;

**(h)** Have authority to establish areas or zones to be served by any station;

**(i)** Have authority to make special regulations applicable to radio stations engaged in chain broadcasting;

**(j)** Have authority to make general rules and regulations requiring stations to keep such records of programs, transmissions of energy, communications, or signals as it may deem desirable;

**(k)** Have authority to exclude from the requirements of any regulations in whole or in part any radio station upon railroad rolling stock, or to modify such regulations in its discretion;

**(l)(1)** Have authority to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to persons who are found to be qualified by the Commission and who otherwise are legally eligible for employment in the United States, except that such requirement relating to eligibility for employment in the United States shall not apply in the case of licenses issued by the Commission to (A) persons holding United States pilot certificates; or (B) persons holding foreign aircraft pilot certificates which are valid in the United States, if the foreign government involved has entered into a reciprocal agreement under which such foreign government does not impose any similar requirement relating to eligibility for employment upon citizens of the United States;

> **(2)** Notwithstanding paragraph (1) of this subsection, an individual to whom a radio station is licensed under the provisions of this chapter may be issued an operator's license to operate that station.
>
> **(3)** In addition to amateur operator licenses which the Commission may issue to aliens pursuant to paragraph (2) of this subsection, and notwithstanding section 301 of this title and paragraph (1) of this subsection, the Commission may issue authorizations, under such conditions and terms as it may prescribe, to permit an alien licensed by his government as an amateur radio operator to operate his amateur radio station licensed by his government in the United States, its possessions, and the Commonwealth of Puerto Rico provided there is in effect a multilateral or bilateral agreement, to which the United States and the alien's government are parties, for such operation on a reciprocal basis by United States amateur radio operators. Other provisions of this chapter and of subchapter II of chapter 5, and chapter 7, of Title 5 shall not be applicable to any request or application for or modification, suspension, or cancellation of any such authorization.

**(m)(1)** Have authority to suspend the license of any operator upon proof sufficient to satisfy the Commission that the licensee--

> > **(A)** has violated, or caused, aided, or abetted the violation of, any provision of any Act, treaty, or convention binding on the United States, which the Commission is authorized to administer, or any

regulation made by the Commission under any such Act, treaty, or convention; or

**(B)** has failed to carry out a lawful order of the master or person lawfully in charge of the ship or aircraft on which he is employed; or

**(C)** has willfully damaged or permitted radio apparatus or installations to be damaged; or

**(D)** has transmitted superfluous radio communications or signals or communications containing profane or obscene words, language, or meaning, or has knowingly transmitted--

**(1)** false or deceptive signals or communications, or

**(2)** a call signal or letter which has not been assigned by proper authority to the station he is operating; or

**(E)** has willfully or maliciously interfered with any other radio communications or signals; or

**(F)** has obtained or attempted to obtain, or has assisted another to obtain or attempt to obtain, an operator's license by fraudulent means.

**(2)** No order of suspension of any operator's license shall take effect until fifteen days' notice in writing thereof, stating the cause for the proposed suspension, has been given to the operator licensee who may make written application to the Commission at any time within said fifteen days for a hearing upon such order. The notice to the operator licensee shall not be effective until actually received by him, and from that time he shall have fifteen days in which to mail the said application. In the event that physical conditions prevent mailing of the application at the expiration of the fifteen-day period, the application shall then be mailed as soon as possible thereafter, accompanied by a satisfactory explanation of the delay. Upon receipt by the Commission of such application for hearing, said order of suspension shall be held in abeyance until the conclusion of the hearing which shall be conducted under such rules as the Commission may prescribe. Upon the conclusion of said hearing the Commission may affirm, modify, or revoke said order of suspension.

**(n)** Have authority to inspect all radio installations associated with stations required to be licensed by any Act, or which the Commission by rule has

authorized to operate without a license under section 307(e)(1) of this title, or which are subject to the provisions of any Act, treaty, or convention binding on the United States, to ascertain whether in construction, installation, and operation they conform to the requirements of the rules and regulations of the Commission, the provisions of any Act, the terms of any treaty or convention binding on the United States, and the conditions of the license or other instrument of authorization under which they are constructed, installed, or operated.

**(o)** Have authority to designate call letters of all stations;

**(p)** Have authority to cause to be published such call letters and such other announcements and data as in the judgment of the Commission may be required for the efficient operation of radio stations subject to the jurisdiction of the United States and for the proper enforcement of this chapter;

**(q)** Have authority to require the painting and/or illumination of radio towers if and when in its judgment such towers constitute, or there is a reasonable possibility that they may constitute, a menace to air navigation. The permittee or licensee, and the tower owner in any case in which the owner is not the permittee or licensee, shall maintain the painting and/or illumination of the tower as prescribed by the Commission pursuant to this section. In the event that the tower ceases to be licensed by the Commission for the transmission of radio energy, the owner of the tower shall maintain the prescribed painting and/or illumination of such tower until it is dismantled, and the Commission may require the owner to dismantle and remove the tower when the Administrator of the Federal Aviation Agency determines that there is a reasonable possibility that it may constitute a menace to air navigation.

**(r)** Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this chapter, or any international radio or wire communications treaty or convention, or regulations annexed thereto, including any treaty or convention insofar as it relates to the use of radio, to which the United States is or may hereafter become a party.

**(s)** Have authority to require that apparatus designed to receive television pictures broadcast simultaneously with sound be capable of adequately receiving all frequencies allocated by the Commission to television broadcasting when such apparatus is shipped in interstate commerce, or is imported from any foreign country into the United States, for sale or resale to the public.

**(t)** Notwithstanding the provisions of section 301(e) of this title, have authority, in any case in which an aircraft registered in the United States is operated (pursuant to a lease, charter, or similar arrangement) by an aircraft operator who is subject to regulation by the government of a foreign nation, to enter into an agreement with such government under which the Commission shall recognize and accept any radio station licenses and radio operator licenses issued by such government with respect to such aircraft.

**(u)** Require that, if technically feasible--

> **(1)** apparatus designed to receive or play back video programming transmitted simultaneously with sound, if such apparatus is manufactured in the United States or imported for use in the United States and uses a picture screen of any size--
>
>> **(A)** be equipped with built-in closed caption decoder circuitry or capability designed to display closed-captioned video programming;
>>
>> **(B)** have the capability to decode and make available the transmission and delivery of video description services as required by regulations reinstated and modified pursuant to section 613(f) of this title; and
>>
>> **(C)** have the capability to decode and make available emergency information (as that term is defined in section 79.2 of the Commission's regulations (47 CFR 79.2)) in a manner that is accessible to individuals who are blind or visually impaired; and
>
> **(2)** notwithstanding paragraph (1) of this subsection--
>
>> **(A)** apparatus described in such paragraph that use a picture screen that is less than 13 inches in size meet the requirements of subparagraph (A), (B), or (C) of such paragraph only if the requirements of such subparagraphs are achievable (as defined in section 617 of this title);
>>
>> **(B)** any apparatus or class of apparatus that are display-only video monitors with no playback capability are exempt from the requirements of such paragraph; and
>>
>> **(C)** the Commission shall have the authority, on its own motion or in response to a petition by a manufacturer, to waive the requirements of this subsection for any apparatus or class of apparatus--

> > **(i)** primarily designed for activities other than receiving or playing back video programming transmitted simultaneously with sound; or
>
> > **(ii)** for equipment designed for multiple purposes, capable of receiving or playing video programming transmitted simultaneously with sound but whose essential utility is derived from other purposes.
>
> **(v)** Have exclusive jurisdiction to regulate the provision of direct-to-home satellite services. As used in this subsection, the term "direct-to-home satellite services" means the distribution or broadcasting of programming or services by satellite directly to the subscriber's premises without the use of ground receiving or distribution equipment, except at the subscriber's premises or in the uplink process to the satellite.
>
> **(w)** Omitted.
>
> **(x)** Require, in the case of an apparatus designed to receive television signals that are shipped in interstate commerce or manufactured in the United States and that have a picture screen 13 inches or greater in size (measured diagonally), that such apparatus be equipped with a feature designed to enable viewers to block display of all programs with a common rating, except as otherwise permitted by regulations pursuant to section 330(c)(4) of this title.
>
> **(y)** Have authority to allocate electromagnetic spectrum so as to provide flexibility of use, if--
>
> > **(1)** such use is consistent with international agreements to which the United States is a party; and
>
> > **(2)** the Commission finds, after notice and an opportunity for public comment, that--
>
> > > **(A)** such an allocation would be in the public interest;
>
> > > **(B)** such use would not deter investment in communications services and systems, or technology development; and
>
> > > **(C)** such use would not result in harmful interference among users.
>
> **(z)** Require that--

**(1)** if achievable (as defined in section 617 of this title), apparatus designed to record video programming transmitted simultaneously with sound, if such apparatus is manufactured in the United States or imported for use in the United States, enable the rendering or the pass through of closed captions, video description signals, and emergency information (as that term is defined in section 79.2 of title 47, Code of Federal Regulations) such that viewers are able to activate and de-activate the closed captions and video description as the video programming is played back on a picture screen of any size; and

**(2)** interconnection mechanisms and standards for digital video source devices are available to carry from the source device to the consumer equipment the information necessary to permit or render the display of closed captions and to make encoded video description and emergency information audible.

**(aa)** Require--

**(1)** if achievable (as defined in section 617 of this title) that digital apparatus designed to receive or play back video programming transmitted in digital format simultaneously with sound, including apparatus designed to receive or display video programming transmitted in digital format using Internet protocol, be designed, developed, and fabricated so that control of appropriate built-in apparatus functions are accessible to and usable by individuals who are blind or visually impaired, except that the Commission may not specify the technical standards, protocols, procedures, and other technical requirements for meeting this requirement;

**(2)** that if on-screen text menus or other visual indicators built in to the digital apparatus are used to access the functions of the apparatus described in paragraph (1), such functions shall be accompanied by audio output that is either integrated or peripheral to the apparatus, so that such menus or indicators are accessible to and usable by individuals who are blind or visually impaired in real-time;

**(3)** that for such apparatus equipped with the functions described in paragraphs (1) and (2) built in access to those closed captioning and video description features through a mechanism that is reasonably comparable to a button, key, or icon designated for activating the closed captioning or accessibility features; and

**(4)** that in applying this subsection the term "apparatus" does not include a navigation device, as such term is defined in section 76.1200 of the Commission's rules (47 CFR 76.1200).

**(bb)** Require--

**(1)** if achievable (as defined in section 617 of this title), that the on-screen text menus and guides provided by navigation devices (as such term is defined in section 76.1200 of title 47, Code of Federal Regulations) for the display or selection of multichannel video programming are audibly accessible in real-time upon request by individuals who are blind or visually impaired, except that the Commission may not specify the technical standards, protocols, procedures, and other technical requirements for meeting this requirement;

**(2)** for navigation devices with built-in closed captioning capability, that access to that capability through a mechanism is reasonably comparable to a button, key, or icon designated for activating the closed captioning, or accessibility features; and

**(3)** that, with respect to navigation device features and functions--

**(A)** delivered in software, the requirements set forth in this subsection shall apply to the manufacturer of such software; and

**(B)** delivered in hardware, the requirements set forth in this subsection shall apply to the manufacturer of such hardware.

**§ 73.3555 Multiple ownership.**

(a)(1) Local radio ownership rule. A person or single entity (or entities under common control) may have a cognizable interest in licenses for AM or FM radio broadcast stations in accordance with the following limits:

>(i) In a radio market with 45 or more full-power, commercial and noncommercial radio stations, not more than 8 commercial radio stations in total and not more than 5 commercial stations in the same service (AM or FM);

>(ii) In a radio market with between 30 and 44 (inclusive) full-power, commercial and noncommercial radio stations, not more than 7 commercial radio stations in total and not more than 4 commercial stations in the same service (AM or FM);

>(iii) In a radio market with between 15 and 29 (inclusive) full-power, commercial and noncommercial radio stations, not more than 6 commercial radio stations in total and not more than 4 commercial stations in the same service (AM or FM); and

>(iv) In a radio market with 14 or fewer full-power, commercial and noncommercial radio stations, not more than 5 commercial radio stations in total and not more than 3 commercial stations in the same service (AM or FM); provided, however, that no person or single entity (or entities under common control) may have a cognizable interest in more than 50% of the full-power, commercial and noncommercial radio stations in such market unless the combination of stations comprises not more than one AM and one FM station.

>(2) Overlap between two stations in different services is permissible if neither of those two stations overlaps a third station in the same service.

(b) Local television multiple ownership rule.

>(1) An entity may directly or indirectly own, operate, or control two television stations licensed in the same Designated Market Area (DMA) (as determined by Nielsen Media Research or any successor entity) if:

(i) The digital noise limited service contours of the stations (computed in accordance with § 73.619(c)) do not overlap; or

(ii) At the time the application to acquire or construct the station(s) is filed, at least one of the stations is not ranked among the top four stations in the DMA, based on the Sunday to Saturday, 7AM to 1AM daypart audience share from ratings averaged over a 12–month period immediately preceding the date of application, as measured by Nielsen Media Research or by any comparable professional, accepted audience ratings service. For any station broadcasting multiple programming streams, the audience share of all free-to-consumer non-simulcast multicast programming airing on streams owned, operated, or controlled by a single station shall be aggregated to determine the station's audience share and ranking in a DMA (to the extent that such streams are ranked by Nielsen or a comparable professional, accepted audience ratings service).

(2) Paragraph (b)(1)(ii) of this section (Top–Four Prohibition) shall not apply in cases where, at the request of the applicant, the Commission makes a finding that permitting an entity to directly or indirectly own, operate, or control two television stations licensed in the same DMA would serve the public interest, convenience, and necessity. The Commission will consider showings that the Top–Four Prohibition, including note 11 to this section, should not apply due to specific circumstances in a local market or with respect to a specific transaction on a case-by-case basis.

\* \* \*

**NOTE 11 to § 73.3555:**

a. An entity will not be permitted to directly or indirectly own, operate, or control two television stations in the same DMA through the execution of any agreement (or series of agreements) involving stations in the same DMA, or any individual or entity with a cognizable interest in such stations, in which a station (the "new affiliate") acquires the network affiliation of another station (the "previous affiliate"), if the change in network affiliations would result in the licensee of the new affiliate, or any individual or entity with a cognizable interest in the new affiliate, directly or indirectly owning, operating, or controlling two of the top-four rated television stations in the DMA at the time of the agreement. Parties should

also refer to the Second Report and Order in MB Docket No. 14–50, FCC 16–107 (released August 25, 2016).

b. Further, an entity will not be permitted through the execution of any agreement (or series of agreements) to acquire a network affiliation, directly or indirectly, if the change in network affiliation would result in the affiliation programming being broadcast from a television facility that is not counted as a station toward the total number of stations an entity is permitted to own under paragraph (b) of this section (e.g., a low power television station, a Class A television station, etc.) or on any television station's video programming stream that is not counted separately as a station toward the total number of stations an entity is permitted to own under paragraph (b) of this section (e.g., non-primary multicast streams) and where the change in affiliation would violate this Note were such television facility counted or such video programming stream counted separately as a station toward the total number of stations an entity is permitted to own for purposes of paragraph (b) of this section.

# CERTIFICATE OF DIGITAL SUBMISSION

I, James M. Carr, hereby certify that with respect to the foregoing:

(1) All required privacy redactions have been made;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of Microsoft Windows 11 Security, last updated on September 16, 2024, and according to the program are free of viruses.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

# CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on September 16, 2024, I filed the foregoing Statutory Addendum with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740