Nos. 24-1380, 24-1480, 24-1493, 24-1516

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

ZIMMER RADIO OF MID-MISSOURI, INC., *et al.*,

*Petitioners*,

ABC TELEVISION AFFILIATES ASSOCIATION, *et al.*,

*Intervenors*.

v.

FEDERAL COMMUNICATIONS COMMISSION, *et al.*,

*Respondents,*

NCTA-THE INTERNET & TELEVISION ASSOCIATION, *et al.*,

*Intervenors.*

On Petition for Review from the
Federal Communications Commission
FCC 23-117, MB Docket No. 18-349

**REPLY BRIEF FOR INTERVENORS, CBS TELEVISION NETWORK AFFILIATES ASSOCIATION, ABC TELEVISION AFFILIATES ASSOCIATION, NBC TELEVISION AFFILIATES, AND FBC TELEVISION AFFILIATES ASSOCIATION IN SUPPORT OF PETITIONERS**

Eve Klindera Reed
  *Counsel of Record*
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
ereed@wiley.law

*Counsel for Television Affiliates Intervenors*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii
INTRODUCTION ..............................................................................................1
ARGUMENT .....................................................................................................2
     I.    The Commission's Retention And Expansion Of The Local Television Rule Is Contrary To The Statute. ......................................................2
     II.   The Commission's Rationales For Retaining The Local Television Rule Are Arbitrary. ................................................................................3
     III.  The Commission's Rationales For Expanding The Local Television Rule Are Arbitrary ..................................................................................7
     IV.  The Commission's New Audience Share Methodology Is Arbitrary. 10
CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ALLTEL Corp. v. FCC*,
   838 F.2d 551 (D.C. Cir. 1988) ................................................................9

*DHS v. Regents of the University of California*,
   591 U.S. 1 (2020) ....................................................................... 5, 8, 9

*Firearms Regulatory Accountability Coalition, Inc. v. Garland*,
   112 F.4th 507 (8th Cir. 2024) ................................... 1, 5, 6, 7, 9, 12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020) ..............................................................................11

*Mozilla Corp. v. FCC*,
   940 F.3d 1 (D.C. Cir. 2019) .................................................................11

*National Fuel Gas Supply Corp. v. FERC*,
   468 F.3d 831 (D.C. Cir. 2006) ..............................................................2

*North American Pharmacal, Inc. v. Department of Health, Education, & Welfare*,
   491 F.2d 546 (8th Cir. 1973) ..............................................................11

*Ohio v. EPA*,
   144 S. Ct. 2040 (2024) .......................................................... 3, 6, 11

**Statutes**

47 U.S.C. § 405 ..........................................................................................10

Pub. L. No. 102-385, 106 Stat. 1460 (1992) ...........................................4

Pub. L. No. 104-104, 110 Stat. 56 (1996) ...............................................2

# INTRODUCTION

Far from refuting the Television Affiliates' arguments, the Commission and the MVPDs confirm that the Court must vacate the Order because it violates both the Communications Act and the Administrative Procedure Act. The Commission does not seriously dispute the former, and the latter is compelled by three basic principles of administrative law.

*First*, the Order "entirely fail[s] to consider" several "important aspect[s] of the problem" and is "not reasonable and reasonably explained." *See Firearms Regul. Accountability Coal., Inc. ("FRAC") v. Garland*, 112 F.4th 507, 519-20 (8th Cir. 2024). The Television Affiliates explained in their opening brief how these errors infect the FCC's competition and other analyses top to bottom.

*Second*, although the Commission and MVPDs seek in some ways to rehabilitate the Order, they rely principally on new reasons and additional evidence, in violation of the well-settled principle of administrative law that the Order must be upheld on the reasoning the agency offered below or not at all. *See id.* at 525 n.15. Because the response briefs offer new grounds that largely abandon the old ones, they cannot remedy the deficiencies in the Order.

*Third*, the Commission's and MVPDs' choice to selectively respond to only some of the Television Affiliates' arguments is inadequate for another reason: a court "will ordinarily vacate" an order if "at least one of the [agency's] rationales is

1

deficient." *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006) (Kavanaugh, J.). And here, because the Order does not say that any of its unlawful rationales are offered "in the alternative," any "flawed rationale" requires vacatur. *Ibid.*

The Court should vacate the Order.

## ARGUMENT

### I. THE COMMISSION'S RETENTION AND EXPANSION OF THE LOCAL TELEVISION RULE IS CONTRARY TO THE STATUTE.

In their opening brief (at 6-9), the Television Affiliates showed how Section 202(h) establishes a standard favoring deregulation. Neither the Commission nor the MVPDs seriously dispute that statutory analysis, yet the Commission continues to argue its case as if Section 202(h) establishes a "plain public interest standard." App.__ (Order ¶ 16); *see* FCC Br. 76-78. Because the Commission relied (and continues to rely) on the wrong statutory standard, the Order is unlawful.

The Commission's expansion of the Rule fares no better. The Television Affiliates showed (at 17) that Section 202(h) authorizes the FCC to "modify" a regulation only after determining it is "no longer in the public interest." Pub. L. No. 104-104, § 202(h), 110 Stat. 56, 111-12 (1996). As the Commission disputes neither that statutory analysis nor that the Order found the Local Television Rule remains in the public interest, the modifications to the Local Television Rule violate the statute too.

2

## II. THE COMMISSION'S RATIONALES FOR RETAINING THE LOCAL TELEVISION RULE ARE ARBITRARY.

The Commission erroneously claims retention of the Local Television Rule is necessary because broadcasters operate in a market unto themselves—to the exclusion of streaming services, social-media offerings, direct-to-consumer platforms, and more. The Television Affiliates' opening brief showed (at 9-11) how this market-definition analysis (i) ignored evidence showing that advertisers and audiences treat broadcast and non-broadcast sources interchangeably, and (ii) erroneously described "advertising revenues" as "fairly steady" even though record evidence showed a massive drop. The FCC does not dispute these points, let alone show that the Order addressed them, thereby confirming the agency's Order ignored "important aspect[s] of the problem." *See Ohio v. EPA*, 144 S. Ct. 2040, 2053-54 (2024).

The Television Affiliates also showed (at 11-12) the Commission's market definition is arbitrary because its "uniqueness" analysis fails to identify any relevant distinctions between broadcast and non-broadcast sources. Neither the FCC nor its intervenors dispute that "unique" goods may still be market substitutes. Nor do they dispute that the Order fails to explain why the purportedly "unique" attributes of broadcast television render it non-substitutable with non-broadcast sources. The lack of any "satisfactory explanation" in the Order on this key piece of the analysis renders the Order unlawful. *Ohio*, 144 S. Ct. at 2054.

3

Even if the Commission explained why purportedly unique factors could support is market definition (which it did not), the uniqueness analysis fails on its own terms. The Television Affiliates showed (at 12-14) that the Order relies on superficial labels instead of substantive differences. For example, although the Order says retransmission consent compensation is unique to broadcast stations, it ignores that non-broadcast sources also sell their content for a fee. Indeed, prior to the advent of retransmission consent compensation, cable operators simply appropriated "local broadcast signals … without the consent of the broadcaster," resulting "in an effective subsidy" for MVPDs. Pub. L. No. 102-385, § 2(a)(19), 106 Stat. 1460, 1462 (1992). This self-appropriated subsidy *was* unique (and untenable); retransmission consent compensation is not. To the contrary, it simply requires MVPDs to pay broadcasters for their programming as they would any other source. Similarly, the Order's claim that network affiliations are unique disregards the fact that non-broadcasters compete for the same network programming—even if they do not call that programming a "network affiliation." The FCC's brief ignores these issues, essentially conceding that the Order overlooks these important aspects of the problem.

Unsurprisingly, the MVPDs emphasize retransmission consent compensation in a flawed attempt to backstop the Commission's uniqueness claim. *See* MVPD Br. 17-20 & n.5. But the Order itself takes a different view, analyzing such

4

compensation as just one factor among several that supposedly make broadcast television a standalone market. It is blackletter law that "agency action is limited to the grounds the agency invoked when it took the action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (cleaned). Here, the FCC did not rely on retransmission consent compensation alone, but also on the purported non-substitutability of broadcast among advertisers and audiences, its erroneous claim that broadcasters have "fairly steady" advertising revenues, and other purported uniqueness factors such as network affiliations. App.\_\_-\_\_, \_\_ (Order ¶¶ 75, 87). As explained, each of these justifications suffer from serious unrebutted deficiencies that are unrelated to retransmission consent compensation. *See* Television Affiliates Br. 9-14. And if retransmission consent compensation held dispositive importance, as the MVPDs urge, then the agency's treatment of it as just one factor among several would itself be a failure to "reasonably consider[ ] the relevant issues." *FRAC*, 112 F.4th at 519.

Similarly, the MVPDs err in arguing that retransmission consent compensation is unaffected by competition for video programming. MVPD Br. 20 n.5. Factually, that argument is incorrect. *See* Television Affiliates Br. 13. And legally, it is beside the point: this Court does not adjudicate economic-policy disputes but instead "ensures that the agency has" "considered the relevant issues and reasonably explained the decision." *FRAC*, 112 F.4th at 519. Here, regardless

5

of the effect of non-broadcast programming competition on retransmission consent compensation, there is no dispute that the FCC failed to consider that effect in the first instance. Television Affiliates Br. 13.

The Commission's viewpoint-diversity rationale for retaining the Local Television Rule is also arbitrary. As the Television Affiliates explained (at 14-15), the Order ignores (i) more than a dozen studies in the record that debunk any link between station ownership and viewpoint diversity, and (ii) the fact that online sources that do not conduct newsgathering still offer viewpoint diversity. The FCC does not dispute that the Order ignores these important aspects of the problem. *See* FCC Br. 45-47 (not addressing).

Finally, the Order fails to acknowledge—or explain why—the agency has departed from its 2017 view that online sources with a "local or hyperlocal focus" were common and proliferating. Television Affiliates Br. 15. Although the Commission's brief now disputes the earlier position, *see* FCC Br. 46 n.14, it relies on impermissible extra-record citations, and "post hoc justifications," *FRAC*, 112 F.4th at 525 n.15. The Order is arbitrary for this reason too.

These largely undisputed shortcomings—individually and taken together—show that the Order is neither "reasonable" nor "reasonably explained," *Ohio*, 144 S. Ct. at 2053, and require vacatur.

## III. THE COMMISSION'S RATIONALES FOR EXPANDING THE LOCAL TELEVISION RULE ARE ARBITRARY.

The Order is "arbitrary and capricious because" it uses "internally inconsistent" reasoning to justify its so-called anti-circumvention measures. *See FRAC*, 112 F.4th at 524. First, the Order justifies retaining the existing Local Television Rule based on its (erroneous) claim that advertising revenues and viewership are "fairly steady."[1] But next, the Order eliminates the basis for that finding by expanding the Rule to close so-called "loopholes" that supposedly helped broadcasters obtain viewers and advertising revenue. As the Television Affiliates explained (at 17-18), these two rationales are at war with each other.

Tellingly, the Commission does not dispute this inconsistency. The MVPDs try to downplay it by asserting that "retransmission consent" revenues have increased, MVPD Br. 40, but that is a red herring; the Commission's erroneous claim of "steady" revenue is specifically about "*advertising* revenue," App.__ (Order ¶ 87) (emphasis added). And the MVPDs' contention (at 40) that the Order "acknowledged that 'broadcasters assert'" the loss of advertising revenue is too-cute-by-half because the Commission erroneously *rejected* the broadcasters' position. App.__ (Order ¶ 87).

---

[1] As explained, the Commission's claim of "fairly steady" advertising revenues arbitrarily overlooked record evidence showing a significant decline.

7

The Television Affiliates also showed (at 19-22) that the Order is arbitrary because the Commission failed to consider four important aspects of its decision to expand the Local Television Rule to reach LPTV stations and multicast streams: (i) the lack of equivalency between LPTV stations, multicast streams, and full-power stations, (ii) how broadcasters generally use LPTV stations and multicast streams in the ordinary course, (iii) the public-interest benefits of LPTV stations and multicasting, and (iv) broadcasters' reliance interests. The Commission disputes only the Television Affiliates' third point (benefits), *see* FCC Br. 59-63, and the MVPDs dispute only the Television Affiliates' first (equivalency), MVPD Br. 40-41. Thus, at minimum, it is undisputed that the Order is arbitrary for failing to consider evidence of general use as well as broadcast stations' reliance interests, which "alone renders [the Order] arbitrary and capricious." *Regents*, 591 U.S. at 30-33.

The Commission and the MVPDs cannot salvage even the two deficiencies they bother to address. First, the Commission briefly mentions (at 59) the benefits of LPTV stations and multicast streams in "short markets." But the benefits raised by Television Affiliates (at 20-21)—such as operational efficiencies and increased newsgathering—are not limited to short markets. Next, the MVPDs seek to draw an equivalence between multicast streams, LPTV stations, and full-power stations based solely on retransmission consent compensation. MVPD Br. 40-41. But that

8

rationale cannot salvage the Order because it is "nowhere to be found in the" agency's justification for expanding Note 11. *Regents*, 591 U.S. at 22. And the Commission cannot wave away these issues with the possibility of "case-by-case" exceptions, FCC Br. 61-62, because "[t]he FCC cannot save an irrational rule by tacking on a waiver procedure." *ALLTEL Corp. v. FCC*, 838 F.2d 551, 561 (D.C. Cir. 1988).

Finally, the Commission's failure to assess the competitive effect of expanding the Local Television Rule is arbitrary. Television Affiliates showed (at 22-23) that the Order's rationale for expanding the Rule suffers from an obvious logical flaw: it relies on the purportedly pro-competitive benefits of its *current* Rule to justify regulating *new* conduct. The FCC does not dispute the deficiency, and the MVPDs attempt to defend it using the same flawed logic as the Order—i.e., that "closing loopholes that interfere with the underlying rule's efficacy" is good for competition because the Rule "is itself justified by competition." MVPD Br. 41. But merely "characteriz[ing] this action as closing a loophole" ignores that the conduct "would not violate any ownership restriction" in the status quo. App.__ (Carr Dissent 93). It is the *change* to the Rule that the Commission must justify with a competition-based analysis. Its failure to do so is arbitrary. *Cf. FRAC*, 112 F.4th at 521 (refusing to excuse arbitrary reasoning when agency offered anti-circumvention rationale).

9

The Order's failure to explain and justify its of expansion of the Rule renders the Order arbitrary and requires vacatur.

## IV. THE COMMISSION'S NEW AUDIENCE SHARE METHODOLOGY IS ARBITRARY.

Television Affiliates showed (at 23-24) the Order's inclusion of measurable multicast streams to calculate a station's audience share is arbitrary: it (i) inconsistently treats multicast streams as part of a full-power television station for purposes of calculating audience share, while treating multicast streams as a separate "station" for purposes of its anti-circumvention measures, and (ii) fails to acknowledge that this methodology will systematically overstate the audience share of popular multicast streams by excluding from the denominator streams without measurable ratings.

Rather than address these substantive issues, the Commission raises two meritless procedural arguments. First, it wrongly claims "no party raised this issue before the Commission." FCC Br. 57 n.19. But Petitioner NAB squarely argued that "[t]reating multicast streams … as stations subject to th[e] [Local Television] rule would be arbitrary and capricious because they are not and never have been equivalent to the full-service TV stations." App.__ (NAB 2021 Comments 100). Thus, the FCC in fact had an "opportunity to pass," 47 U.S.C. § 405(a), on Television Affiliates' argument here (at 23-24) that it is arbitrary for the Commission to "treat measurable multicast streams as part of the same [full-power] station" under

10

the Local Television Rule. *See Ohio*, 144 S. Ct. at 2056 (rejecting similar exhaustion argument).

Next, the Commission argues based only on D.C. Circuit authority that the Television Affiliates as Intervenors cannot raise an issue unless Petitioners do so first. FCC Br. 57 n.19; *see also* MVPD Br. 43. But this Court's precedent does not afford intervenors of right a lesser-party status. *See N. Am. Pharmacal, Inc. v. Dep't of Health, Ed., & Welfare*, 491 F.2d 546, 550 (8th Cir. 1973) (treating putative petitioners as intervenors to reach their merits arguments); *cf. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020) (explaining "intervenor of right" can "pursue[ ] relief that is broader than or different from the party invoking a court's jurisdiction"). And, regardless, Television Affiliates' argument would be permitted even in the D.C. Circuit because it does not raise a new issue but an "argument in support of claims the Petitioners have presented." *Mozilla Corp. v. FCC*, 940 F.3d 1, 48 (D.C. Cir. 2019); *see* Pet. Br. 5 (presenting as issue whether it was "arbitrary and capricious" for FCC to "attribut[e] … multicast channels" under "Local Television Rule").

Television Affiliates' arguments are properly before this Court, and, by raising only procedural objections, the FCC has waived any substantive response. The MVPDs purport to offer such a response but in fact merely parrot the Order, MVPD Br. 43-44, failing to rebut Television Affiliates' argument that the Order's

11

rationales are "internally inconsistent" and thus "arbitrary." *See FRAC*, 112 F.4th at 524. Furthermore, the MVPDs' conclusory assertion (at 44) that the new methodology was "reasonable" cannot overcome the FCC's failure to consider the data limitations of its new methodology. The Order is arbitrary for these reasons too.

## CONCLUSION

The Court should vacate the Order.

October 15, 2024

Respectfully Submitted,

*/s/ Eve Klindera Reed*
Eve Klindera Reed
  *Counsel of Record*
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
ereed@wiley.law

*Counsel for Television Affiliates Intervenors*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations imposed by this Court's Order of May 3, 2024 because this brief contains 2,499 words, and the additional Petitioner-side Intervenor brief will contain 2,500 words or less.

This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses and is virus-free.

October 15, 2024                                       */s/ Eve Klindera Reed*
                                                                                           Eve Klindera Reed

# CERTIFICATE OF SERVICE

I certify that on October 15, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

*/s/ Eve Klindera Reed*
Eve Klindera Reed
