GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036-5306
Tel 202.955.8500
gibsondunn.com

Andrew G.I. Kilberg
Direct: +1 202.887.3759
Fax: +1 202.887.3599
Akilberg@gibsondunn.com

April 16, 2025

<u>VIA CM/ECF</u>

Susan E. Bindler
Clerk of Court
U.S. Court of Appeals for the Eighth Circuit
Thomas F. Eagleton Courthouse
111 South 10th Street
St. Louis, MO 63102

Re: No. 24-1380, 24-1480, 24-1493, 24-1516, *Zimmer Radio of Mid-Missouri, et al. v. Federal Communications Commission, et al.*—Response to Notice of Supplemental Authority, Pursuant To Federal Rule of Appellate Procedure 28(j)

Dear Ms. Bindler,

Petitioners write to respond to the Commission's notification of supplemental authority ("Notice") regarding the waiver issued to Marquee Broadcasting ("Waiver Order"). That the Commission may occasionally issue a waiver—indeed, just weeks after oral argument in a challenge to its ownership rules—hardly "confirm[s]" that the Top-Four Prohibition is lawful. Notice 1.

*First*, the waiver was only granted due to supposedly "unique market conditions" in Eureka, California. Waiver Order ¶ 9. All that shows is that the categorical Top-Four Prohibition sweeps far beyond what is supportable, particularly because the Commission already must approve every station transfer even absent that rule. 47 U.S.C § 310(d).

Regardless, Eureka is not "unique." As the Commission noted, economies of scale from ownership of the two stations is what allows each to produce local news, and the market cannot support four independent newsrooms. *Id.* ¶¶ 5-6, 12. That is true in *many* geographic markets. *See* App.1642-49, 1706-07, 2045-49.

*Second*, waivers under the "case-by-case" process are still rare. Even including the Marquee transaction, there have been only two since 2020—and both merely allowed continuance of *pre-existing* top-four combinations. Petitioners' Br. 49 n.9. (The Marquee combination includes a low-power station that did not even count for purposes of the Local TV Rule until the Order under review.)

The Commission at oral argument also identified another exemption conveniently granted a week earlier—but under a *different* waiver process for "failing stations." *Application for Consent to Assignment for License*, DA 25-217 (Med. Bur. Mar. 11, 2025); *see* 47 C.F.R. § 73.35555, note 7. A station should not have to wait until it is failing to get a lifeline.

*Third*, the unpredictability and prolonged nature of the waiver process deters applications. Petitioners' Br. 49-50. One faster waiver review does not change that. Just two years ago, a broadcaster withdrew its waiver application after the Commission sat on the request for 18 months. *See* Petitioners' Reply 19-20.

*Finally*, and in any event, it is bedrock administrative law that exceptions cannot save an irrational rule. *See, e.g.*, *ALLTEL Corp. v. FCC*, 838 F.2d 551, 561 (D.C. Cir. 1988).

Respectfully submitted,

/s/ *Andrew G.I. Kilberg*

Andrew G.I. Kilberg
*Counsel for Petitioner National Association of Broadcasters*

cc: Counsel of record (via ECF)